# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAEZE NWANONYIRI,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>SPROUTS FARMERS MARKET, INC., JOHN DOES 1-10,<br><br>　　　　　　　　　Defendants. | Case No.: 25cv1081 DMS (DDL)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND GRANTING MOTION TO STRIKE PUNITIVE DAMAGES** |

　　　This case comes before the Court on Defendant Henry's Holdings, LLC, dba Sprouts Farmers Market's ("Defendant" or "Henry's") motions to dismiss Plaintiff's First Amended Complaint ("FAC") and strike punitive damages. Plaintiff filed an omnibus opposition, and Defendant filed a reply. The matter is fully briefed and submitted.

　　　Plaintiff, an African-American woman, brings seven claims against Henry's for discrimination based on race that occurred during four separate incidents from October 21 to December 4, 2024, while she shopped at a Sprouts Farmers Market in Carlsbad, San Diego County. Specifically, Plaintiff alleges claims for: (1) Violation of the Unruh Civil Rights Act (Cal. Civ. Code §§ 51, *et seq.*) ("Unruh Act"); (2) Violation of 42 U.S.C. § 1981 (Race Discrimination in Contracts): (3) Violation of California's Bane Act (Cal. Civ. Code § 52.1); (4) Negligent Supervision and Retention; (5) Intentional Infliction of Emotional

Distress ("IIED"); (6) Negligent Infliction of Emotional Distress ("NIED"); and (7) Declaratory and Injunctive Relief. For the reasons set forth below, the Court grants Defendant's motion to dismiss as to all claims except the Unruh Act and NIED claims and strikes Plaintiff's punitive damages allegations.

I.  Legal Standard.

In deciding a motion to dismiss under Federal Rule of Procedure 12(b)(6), the Court is mindful of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), where the Supreme Court established a more stringent standard of review for 12(b)(6) motions. To survive a motion to dismiss under this standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Under these authorities, the Court must view the allegations of the complaint in the light most favorable to Plaintiff, consider allegations of the complaint as true, and accept all reasonable inferences—though the Court is "not required to indulge in unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation omitted). And while detailed factual allegations are not required under Rule 8(a)(2), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff's claims must contain sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

Pursuant to Rule 12(f), a court "may order stricken from any pleading…any redundant, immaterial, impertinent or scandalous matter." This rule allows the parties and the court to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing those issues prior to trial." Fed. R. Civ. P. 12(f). Determination of whether to apply a federal or state law to a pendent state claim in federal court depends upon classification of the state law as procedural or substantive. *Jackson v. E. Bay Hosp.*, 980 F. Supp. 1341, 1353 (N.D. Cal. 1997). The court considers California Civil Code section 3294 to be substantive law, as it establishes a right to recover punitive

damages, and lists the essential elements, rather than laying out a procedural requirement. *Id*. Although the court applies the substantive law embodied in section 3294 "'determinations regarding the adequacy of pleadings are governed by the Federal Rules of Civil Procedure.'" *Id.* (citations omitted). Pursuant to those rules, "a pleading need only 'contain ... a short and plain statement of the claim showing that the pleader is entitled to relief and ... a demand for judgment for the relief the pleader seeks." Fed. R. Civ. P. 8(a). Therefore, despite section 3294's specific requirement that a pleading allege oppression, fraud or malice, these 'may be averred generally.'" *Id.* at 1353-54 (citing Fed. R. Civ. P. 9(b)).

II.     FAC Allegations.

The FAC asserts that Defendant's employees engaged in discriminatory conduct towards Plaintiff during her visits to Defendant's Carlsbad store on October 21, November 13 and 20, and December 4, 2024. Plaintiff alleges on October 21, while using the self-checkout to scan her groceries, she "was unexpectedly stopped by store manager, Dawn (Caucasian female), who positioned herself next to Plaintiff and prevented her from continuing[,]" stating: "You cannot scan those items that way. That is not how we do it here. We need to make sure that you pay." (FAC at 3.) Plaintiff compares this to "other shoppers (including a Caucasian customer nearby)" who "used the same scanning method without interference." (*Id.*) "The only apparent difference between Plaintiff and the other customer was race." (*Id.*)

The FAC next identifies an occasion on November 13, where store manager Dawn "immediately began tailing" Plaintiff but not her Caucasian husband Lenny Rosenberg. (*Id.*) "Shortly thereafter, Dawn entered the store's back office and made intercom announcements that were: "'[unintelligible] office, [unintelligible] office[,]'" but assumes they were "security alerts." At the checkout, Plaintiff was *not* confronted "seemingly due to the presence of her Caucasian husband." Plaintiff alleges this incident demonstrates "selective targeting" of her, thus "reinforcing the discriminatory nature of the incident." (*Id.* at 4.)

In another instance on November 20, Plaintiff alleges that soon after she entered the store, manager Dawn entered the back office and made an intercom announcement, stating "'[unintelligible] office, [unintelligible] office.'" (*Id.*) Another store manager "Riley (Caucasian male)[,]" then approached Plaintiff at the self-checkout and told her: "You cannot use your phone to record, or you will have to leave. I am going to call the police." (*Id.*) Plaintiff contrasts this with her observation that "another Defendant employee (a Caucasian woman) freely and publicly recorded the check-out interaction … [but] faced no intervention, admonishment, or threat of police involvement" (*Id.*) Plaintiff alleges this incident demonstrates "selective enforcement of what appeared to be an unwritten or inconsistently applied policy[,]" indicative of "the discriminatory treatment Plaintiff endured." (*Id.*)

Finally, Plaintiff alleges on December 4, after she began scanning items at the self-checkout, "an announcement came over the store intercom stating, "'Antonio 115, Antonio 115,'" and that after completing her purchase she was "closely monitored" and "followed" by an "unidentified female employee[,]" which Plaintiff alleges was a "baseless and overt act of intimidation" demonstrating a continued pattern of "racial profiling and unnecessary security alerts whenever Plaintiff was present." (*Id.*)

Plaintiff characterizes the four incidents above as "obstruction at self-checkout, surveillance and security alert, threat of police intervention, and followed outside the store," respectively. Plaintiff alleges "each of these incidents demonstrates a consistent pattern of racial discrimination … while white customers were not subjected to the same treatment." (*Id.*) She bases all her claims on Defendant's "repeated and intentional racial profiling, public humiliation, and threats of police intervention[.]" (*See id.* at 6-13.)

III. <u>Analysis</u>.

    A. <u>Unruh Act</u>.

The Unruh Act is intended to prevent the "denial of full and equal accommodations, advantages, facilities, privileges or services" based on protected characteristics, such as race, "in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

1 Relevant here, the Act requires "equal treatment of patrons in all aspects of the business." *Koire v. Metro Car Wash*, 40 Cal. 3d 24, 29 (1985).

To state a claim under the Unruh Act, a plaintiff must allege the following elements: (1) she suffered discrimination "in a business establishment;" (2) her protected status "was a motivating factor;" (3) the defendant's action "was the result of its intentional discrimination" against the plaintiff; and (4) the "wrongful conduct caused h[er] to suffer injury." *Bridges v. Kohl Stores, Inc.,* No. 23-cv-00685-DAD-JDP, 2024 WL 4647621, at *3 (E.D. Cal. Oct. 31, 2024) ("*Bridges II*") (citation omitted); *see also* Judicial Council of California, Civil Jury Instructions ("CACI") No. 3060 (Unruh Civil Rights Act—Essential Factual Elements) (2024). "To plead intentional discrimination, [a] plaintiff cannot merely invoke his race in the course of a claim's narrative." *Bridges II,* 2024 WL 464621, at *3 (citing *Jimenez v. Home Depot Inc.*, No. 2:23-cv-00937-WBS-AC, 2023 WL 5021266, at *3 (E.D. Cal. Aug. 7, 2023)). Further, a personal belief of discrimination, without factual support, is "insufficient to satisfy federal pleading standards." (*Id.*) (citation omitted). Rather, a plaintiff must include "some factual context that gives rise to a plausible inference of discriminatory intent." (*Id.*) (citation omitted).

Plaintiff argues she "pleads side-by-side comparative treatment of white customers and repeated conduct establishing intentional discrimination." (Opp'n at 5.) She notes her FAC "alleges that on October 21, 2024, a store manager prevented Plaintiff from using self-checkout while allowing a Caucasian customer to use the same method. On November 20, 2024, the store manager threatened to call police on Plaintiff for recording while allowing a Caucasian employee to record without interference. On December 4, 2024, Plaintiff was followed outside the store to her vehicle[,]" and that these allegations are sufficient to state a claim. (*Id.* at 4-5.)

Defendant focuses on the third element of an Unruh Act claim and argues Plaintiff fails to plead facts plausibly supporting intentional discrimination. Defendant argues Plaintiff "fails to allege any facts showing similarly situated customers outside her protected class were treated differently," (Mot. at 5), but that is not so. Specifically,

5

Plaintiff alleges "that while using the self-checkout to scan her groceries" she was abruptly stopped by white store manager Dawn who stated, "You cannot scan those items that way. That is not how we do it here. We need to make sure that you pay." (FAC at 3.) Plaintiff further alleges she was "confused by the interruption" because she "observed other shoppers (including a Caucasian customer nearby) using the same scanning method without inference." (*Id.*) These allegations, which are credited at this stage, are specific and point to conduct and instances where others not in Plaintiff's protected class were treated differently. *See Bridges II,* 2024 WL 4647621, at *3 (finding allegations that "other non-Black customers who were inside the store during the incident were not treated in the same way" was sufficient to state Unruh Act claim); *James v. U.S. Bancorp,* 816 F. App'x 181, 182 (9th Cir. 2020) (reversing district court decision finding plaintiffs' allegations that customers of other races were allowed to open bank accounts was insufficient to show intentional discrimination under the Unruh Act); *Thomas v. Costco Wholesale Corp.,* No. 2:24-cv-00986-TLN SCR, 2024 WL 5125813, at *3 (E.D. Cal. Dec. 13, 2024) (finding Black customers who were questioned about their membership card while store employee did not check "anyone else's in the self-checkout lane" and "only asked people of color to show their cards" sufficient "to provide a reasonable inference of discriminatory intent" under the Unruh Act). So it is here.[1] Defendant's motion to dismiss this claim is denied.

B. <u>42 U.S.C. § 1981 (Race Discrimination in Contracts)</u>.

Section 1981 guarantees all persons within the United States the same right "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property[.]" To state a claim under § 1981, "a plaintiff must show that (1) she is a member of a racial minority; (2) the

---

[1] Plaintiff also alleges the store manager threatened to call police on Plaintiff for recording while allowing a Caucasian *employee* to record without interference. (FAC at 4.) In her opposition, Plaintiff refers to the alleged employee as a "white customer[.]" (Opp'n at 5.) Plaintiff may clarify this discrepancy if she elects to file a Second Amended Complaint. If this incident involves a customer it would further advance Plaintiff's argument that she has plausibly alleged intentional discrimination; if the incident involves an employee, it is unclear how that alleged fact would advance Plaintiff's theory.

defendant discriminated against her on the basis of her race; and (3) the discrimination implicated one or more of the activities listed in the statute, including the right to make and enforce contracts." *Hammond v. Kmart Corp*, 733 F.3d 360, 362 (1st Cir. 2013) (citation omitted). The term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 28 U.S.C. § 1981(b).

Plaintiff argues § 1981 provides relief against commercial establishments where a plaintiff "receive[s] services in a markedly hostile and objectively unreasonable manner[,]" citing *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001) (stating a plaintiff can establish a claim under § 1981 where she was "denied the right to enter into or enjoy the benefits ... of [a] contractual relationship ... [by] receiv[ing] services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory."). She argues the FAC states a claim under § 1981 because it alleges her "ability to freely shop and contract was significantly impaired" as she was "physically obstructed at checkout[,]" "subjected to verbal threats of initiating police action[,]" and "treated differently than white customers shopping inside the same establishment." (Opp'n at 5.)

*Christian*, however, has not been followed by any other Circuit. *See Hammond*, 733 F.3d at 365 n.6 (stating "'[a]part from the 6th Circuit, it does not appear that any other circuit court has embraced the *Christian* court's expanded formulation.'"). Since *Christian,* the Supreme Court has interpreted the "make or enforce contract" element of § 1981 to "offer[] relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). Thus,

> to state a claim a plaintiff must 'initially identify an *impaired* 'contractual relationship,' § 1981(b), under which the plaintiff has rights.' *Id.* (emphasis added). Absent this requirement, § 1981 would become a catch-all remedy to racial discrimination, 'produc[ing] satellite ... litigation of immense scope.' [Citing *Domino's Pizza,* 546 U.S. at 479.] As the Eighth Circuit has stated,

'[s]ection 1981 'does not provide a general cause of action for race discrimination.'" *Green v. Dillard's Inc.,* 483 F.3d 533, 538 (8th Cir. 2007) (citation omitted).

*Hammond*, 733 F.3d at 364 (original emphasis). *See also Lopez v. Target Corp.*, 676 F.3d 1230, 1234–35 (11th Cir. 2012) (ruling that a retail store must "thwart" a plaintiff's right to contract under § 1981 and dismissing a claim under that section where a white cashier twice refused to serve a Hispanic customer because a different cashier agreed to serve him); *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003) (stating that the Circuit will recognize a § 1981 claim "where a customer has engaged in an actual attempt to contract that was thwarted by the merchant ") (citation omitted); *Bagley v. Ameritech Corp.*, 220 F.3d 518, 519–520, 521 (7th Cir. 2000) (dismissing a § 1981 claim because the retail store did not refuse to contract with a Black customer where a Caucasian sales manager refused to serve him and gave him the finger but a different sales associate offered him help).[2]

This Court follows *Hammond* and the Fifth, Seventh, and Eleventh Circuits, which hold that a claim under § 1981 must identify an impaired contractual relationship. It is undisputed Plaintiff was not denied service or refused a transaction by Defendant. Accordingly, Plaintiff's § 1981 claim fails.[3]

        C.    <u>Bane Act</u>.

There are two distinct elements for a claim under the Bane Act. "A plaintiff must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015). Plaintiff argues "Defendant's store manager told Plaintiff she could not record

---

[2] The Ninth Circuit in *Lindsey v. SLT Los Angeles LLC,* 447 F.3d 1138, 1145 (9th Cir. 2006), noted the inter-circuit dispute but declined to decide whether the Sixth Circuit's approach should be "required in many or all cases arising in a commercial, non-employment context."

[3] The FAC alleges subject matter jurisdiction based on federal question. (FAC at 2.) If Plaintiff elects to file a Second Amended Complaint, she must allege another basis for subject matter jurisdiction now that her federal claim has been dismissed.

herself during checkout and threatened to call the police," and the "threat of calling the police (grounded in racial animus) is coercion designed to interfere with Plaintiff's statutory rights under the Unruh Act." (Opp'n at 5.) However, speech alone is not sufficient to support a Bane Act claim, except upon a showing that the speech itself threatens violence. *Allen,* 234 Cal. App. 4th at 676; *Jackson v. City of Fontana,* EDCV 20-1372 JGB (SHKx), 2020 WL 7382776, at *7 (C.D. Cal. Oct. 15, 2020) (similar). And Plaintiff's argument that a race-based threat to call police transcends the encounter from a threat to coercion under the statute is unavailing. *See Cabesuela v. Browning-Ferris Industries,* 68 Cal. App. 4th, 101, 111 (1998) (stating "it is clear that to state a cause of action under section 52.1 there must first be violence or intimidation by threat of violence.") Plaintiff therefore fails to state a claim under the Bane Act.

          D.      <u>Negligent Supervision and Retention</u>.

To state a claim for negligent hiring, supervision, or retention, a plaintiff must allege facts showing: (1) the employer hired the employee; (2) the employee was or became unfit or incompetent to perform the work for which they were hired, or posed some other particular risk; (3) the employer knew or should have known of the employee's unfitness, incompetence, or particular risk, and that such condition created a risk of harm to others; (4) the employee's unfitness, incompetence, or particular risk caused harm to the plaintiff; and (5) the employer's negligence in hiring, supervising, or retaining the employee was a substantial factor in causing the harm. *See* CACI No. 426 (Negligent Hiring, Supervision, or Retention of Employee).

Plaintiff argues she has stated a negligent supervision claim because she alleged a "repeated pattern of discrimination across multiple visits by different employees suggests either authorization or ratification of the discriminatory conduct by management[,]" and the "systematic nature of the treatment indicates corporate policy or practice rather than isolated employee misconduct." (Opp'n at 6.) The FAC, however, simply recites in conclusory terms some of the elements of a negligent supervision claim. (*See* FAC at 10 (alleging "Defendant had a duty to properly train, supervise, and discipline its employees

to ensure compliance with anti-discrimination laws[,]" and "Defendant knew or should have known that its employees engaged in unlawful conduct but failed to implement adequate training, supervision, or disciplinary measures to prevent such misconduct.").)

Plaintiff fails to plead any facts that would allow the Court to properly draw such inferences in her favor. For example, as Defendant notes, the FAC refers to employees Dawn and Riley but offers no factual basis to suggest Defendant knew or should have known that either employee posed a risk of engaging in the alleged discriminatory conduct. Plaintiff pleads no facts showing that Defendant had prior notice of misconduct, that any employee posed a foreseeable risk, or that Defendant's failure to act contributed to Plaintiff's alleged injuries. Accordingly, Plaintiff has failed to state a claim for negligent supervision and retention.

### E.  IIED Claim.

To state a claim for IIED, a plaintiff must plead facts establishing: (1) defendant's conduct was extreme and outrageous, (2) defendant intended to cause emotional distress or acted with reckless disregard of the probability of causing emotional distress, (3) plaintiff suffered severe emotional distress, and (4) defendant's conduct was a substantial factor in causing such distress. *See* CACI No. 1600 (IIED—Essential Factual Elements). Defendant focuses on the first element—extreme and outrageous conduct—which can be addressed at the pleadings stage given its susceptibility to objective assessment. *See Bock v. Hansen,* 225 Cal. App. 4th 215, 235 (2014) (stating "many cases have dismissed" IIED claims at the pleadings stage).

Behavior may be considered outrageous if a defendant: (1) abuses a relation or position that gives him power to damage the plaintiff's interest, (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress. *Molko v. Holy Spirit Ass'n,* 46 Cal. 3d 1092, 1122 (1988); CACI No. 1602 ("Outrageous Conduct Defined). A defendant's conduct "'is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized society.'" *Bridges v. Kohl's Stores,*

*Inc.,* No. 2:23-cv-00685-DAD-JDP, 2024 WL 584319, at * 4 (E.D. Cal. Feb. 13, 2024) ("*Bridges I*") (quoting *Hughes v. Pair,* 46 Cal. 4th 1035, 1050-51 (2009)). However discriminatory conduct "does not necessarily constitute extreme and outrageous conduct[,]" (*id.* (citation omitted)), particularly "in the absence of threatening or offensive language[.]" *Jimenez,* 2023 WL 5021266, at *3.

Plaintiff alleges she was obstructed at checkout, surveilled, followed, and threatened with police intervention—while white customers engaged in the same conduct without interference. She argues this "is not 'routine oversight,' but deliberate racial profiling and intimidation. Threatening to call police on an innocent Black shopper, in a public setting, is humiliating, coercive, and foreseeably distressing." (Opp'n at 6-7.) Defendant cites several cases involving similar facts that have dismissed IIED claims for failing to allege extreme and outrageous conduct. *See, e.g., Bridges I,* 2024 WL 584319 (dismissing IIED claim where Black plaintiff allegedly was "aggressively" followed by Kohl's loss prevention associate, had his shopping cart "grabbed" and taken to customer service until his white girlfriend returned, and was provided false pricing information about a store product); *Thomas*, 2024 WL 5125813 (dismissing IIED claims where Costco employee allegedly "rushed over and aggressively" demanded at self-checkout that two Black customers show their Costco membership card, questioned whether the "actual cardholder" was present, and did not check anyone else's Costco card in the self-checkout lane); *Jimenez*, 2023 WL 5021266 (holding that monitoring two Hispanic customers by Home Depot employee, verifying their purchases at self-checkout, and running after them in parking lot and demanding proof of purchase failed to state an IIED claim).

Plaintiff's allegations are like those in *Bridges, Thomas,* and *Jimenez,* and fail to allege conduct that is so extreme and outrageous as to transcend the bounds of normalcy. Her claims are based in alleged discriminatory conduct by Defendant's employees, which standing alone are insufficient. The additional allegation that Defendant's employees threatened to call the police does not elevate the claim to extreme or outrageous conduct. Accepting Plaintiff's allegation as true, the "threat" to call law enforcement to intervene in

such a dispute is not extreme and outrageous and is far different from leveling threats of physical violence or racial slurs. Plaintiff's IIED claim fails as a matter of law.

### F. NIED Claim.

NIED is "not a separate tort or cause of action." CACI No. 1620 (Negligence—Recovery of Damages for Emotional Distress—No Physical Injury—Direct Victim—Essential Factual Elements) (Directions for Use). "It simply allows certain persons to recover damages for emotional distress only on a negligence cause of action even though they were not otherwise injured or harmed." *Id.* (citing *Molien v. Kaiser Foundation Hospitals,* 27 Cal. 3d 916, 928 (1980)). To establish a "direct victim" NIED claim, Plaintiff must allege and prove that: (1) Defendant was negligent; (2) Plaintiff suffered serious emotional distress; and (3) Defendant's negligence was a substantial factor in causing Plaintiff's serious emotional distress. *Id.* The traditional elements of duty, breach of duty, causation, and damages apply. *Marlene F. V. Affiliated Psychiatric Medical Clinic, Inc.,* 48 Cal. 3d 583, 588 (1989).

Whether a defendant owes a duty of care is a question of law. *Id.* Foreseeability is a critical factor in determining the existence and scope of any duty. *See Ochoa v. Superior Court,* 39 Cal. 3d 159, 165 (1985) (stating "[s]ince the chief element in determining whether defendant owes a duty or an obligation to plaintiff is the foreseeability of the risk, that factor will be of prime concern in every case.") *See also Marlene,* 48 Cal. 3d at 588 (stating the existence of a duty of care "depends upon the foreseeability of the risk and upon a weighing of policy considerations for and against imposition of liability.") "[D]uty is found where the plaintiff is a 'direct victim,' in that the emotional distress damages result from a duty owed the plaintiff 'that is 'assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two.'" *McMahon v. Craig,* 176 Cal. App .4th 1502, 1510 (2009) (citations omitted).

Defendant notes that while Plaintiff alleges Defendant owed her a duty to provide a "non-discriminatory, safe, and respectful shopping environment[,]" she does not identify any statute, regulation, or case law establishing such a duty, nor does she allege … a special

relationship existed between Plaintiff and Henry's." (Mot. at 12-13.) True, but such authorities do exist. For example, in *Koire,* the California Supreme Court held under the Unruh Act that businesses must provide "equal treatment of patrons in all aspects of the business." 40 Cal. 3d at 29 (stating, "[t]he scope of the statute clearly is not limited to exclusionary practices. The Legislature's choice of terms evidences concern not only with access to business establishments, but with equal treatment of patrons in all aspects of the business.") And in *Morris v. DeLaTorre,* 36 Cal. 4th 260, 269 (2005), the California Supreme Court held that business proprietors have a "special relationship" with their patrons and "owe an affirmative duty to protect [them] from the conduct of third parties, or to assist another who has been attacked by third parties[.]" The duty to protect patrons from third party harm is not at issue here, but it is clear there is a special relationship between businesses and patrons in some contexts and the special relationship found in *Morris* could be expanded to other business-patron contexts. *See, e.g., Thomas,* 2024 WL 5125813, at *5 (holding plaintiffs' allegations of race discrimination and breach of "duty of care by discriminating against their patrons" adequately alleged Unruh Act and negligence claims against retailer).

Defendant argues regardless of whether a duty exists, the facts "alleged do not show a breach of that duty or that serious emotional distress was a foreseeable result of the alleged conduct." (Mot. at 13.) But as discussed above, Plaintiff has alleged facts that support an Unruh Act claim and she has alleged Defendant's conduct was so egregious it caused "distress … so severe that it required medical treatment, prescriptions, and relocation." (Opp'n at 7; FAC at 11 (alleging, "Plaintiff's distress is ongoing and has required medical intervention, including therapy and prescription medication.")) Accepting Plaintiff's allegations as true and drawing all reasonable inferences in her favor from the totality of circumstances, Plaintiff has plausibly alleged serious emotional distress

was a foreseeable result of Defendant's employees' breach of duty care by discriminating against her.[4]  Defendant's motion to dismiss this claim is denied.

### G.  Declaratory and Injunctive Relief.

The FAC's seventh cause of action is for declaratory and injunctive relief.  There is no cause of action for injunctive relief.  An injunction is a form of equitable remedy, not a claim.  *Modej v. Maiden,* 951 F.3d 364, 369 (6th Cir. 2020) (stating "[i]f plaintiffs cannot show 'actual success' on their claims, they cannot obtain a permanent injunction") (citation omitted).  Plaintiff's claim for injunctive relief is therefore dismissed.  However, injunctive relief is available under the Unruh Act.  *Koire,* 40 Cal. 3d at 28 n.5 (stating "[a]lthough the Unruh Act makes no express provision for injunctive relief, that remedy as well as damages may be available to an aggrieved person.") (Citation omitted).  Plaintiff's Prayer for Relief includes a request for injunctive relief.  That Prayer will remain and if Plaintiff succeeds on her Unruh Act claim injunctive relief can be addressed at that time.

Plaintiff's claim for declaratory relief is based on one sentence: "Plaintiff also seeks a declaratory judgment affirming that Defendant's past practices violated her civil rights and must be corrected to ensure compliance with federal and state anti-discrimination laws."  Conclusory claims for such relief "without descriptions of the particular relief sought and supporting factual allegations … are not sufficient to state a cognizable claim upon which relief may granted."  *Quezada v. California,* No. 1:20-cv-00959-DAD-SAB, 2021 WL 2417119, at *6 (E.D. Cal. June 14, 2021).  This claim is therefore dismissed.

### H.  Punitive Damages.

"California law limits the ability to impose punitive damages on a corporate employer for the acts of an employee."  *Bridges I,* 2024 WL 584319, at *7 (citing Cal. Civ. Code § 3294).  As noted, there are three paths under section 3294 to such recovery: (1) if

---

[4] The FAC alleges in each claim that Defendant is liable under the doctrine of respondeat superior and "[a]t all relevant times, Defendant's employees were presumed to be acting within the course and scope of their employment."  (*See., e.g.,* FAC at 12.)

an officer, director, or managing agent of the corporate employer knew of the employee's unfitness and employed her with conscious disregard for the rights of others; (2) if an officer, director, or managing agent of the corporation authorized or ratified the employee's oppressive, fraudulent, or malicious conduct; or (3) if the employer was personally guilty of oppression fraud, or malice. *Id.*

Plaintiff's sole allegation in support of punitive damages—repeated in each claim—is "Defendant's actions were intentional, willful, and carried out in reckless disregard of Plaintiff's constitutional rights." (FAC at 7-13.) Plaintiff fails to plead any facts that an officer, director, or managing agent of Henry's ratified Dawn or Riley's conduct, or were themselves personally implicated in acts of oppression, fraud or malice. In addition, Plaintiff fails to state claims for all but the Unruh Act and NIED claims, thus punitive damages under those failed claims are not viable. Whether Plaintiff can sufficiently allege punitive damages under the Unruh Act and NIED is questionable, but the Court is not prepared to conclude it is futile. Plaintiff's punitive damages allegations are therefore stricken with leave to amend.

IV. <u>Conclusion</u>.

For these reasons, Defendant's motion to dismiss is denied as to the Unruh Act and NIED claims, and granted with leave to amend as to all other claims except for the second claim under 42 U.S.C. § 1981, which is granted without leave to amend. Unlike the other dismissed claims, any attempt to amend that claim would be futile. Plaintiff's punitive damages allegations are stricken with leave to amend. Plaintiff will file her Second Amended Complaint with fourteen days of the filing of this Order, which will include allegations stating a basis for subject matter jurisdiction.

**SO ORDERED.**

Dated: January 7, 2026

Hon. Dana M. Sabraw
United States District Judge